# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TEXAS
*Sherman Division*

| | |
|---|---|
| **CHARLES R. BOURQUE** | **CIVIL ACTION NO. 4:22-cv-00698** |
| **VERSUS** | **HON. JUDGE SEAN D. JORDAN** |
| **C. PEPPER LOGISTICS, LLC; INDEPENDENT SERVICE PROVIDER, LLC; and JAMES L. PEPPER** | |

## PLAINTIFF, CHARLES R. BOURQUE'S FIRST AMENDED AND SUPERSEDING COMPLAINT

NOW COMES Plaintiff, Charles R. Bourque, through undersigned counsel, who respectfully represents as follows.

### NATURE OF THE ACTION

1.

This is an action by Charles R. Bourque ("Plaintiff") to recover unpaid overtime wages. Plaintiff was employed by Defendant C. Pepper Logistics, LLC, Independent Service Provider, LLC, James L. Pepper, and Carol A. Pepper ("Defendants") as a truck driver. While working for Defendants, Plaintiff was not paid one-and-a-half times his regular hourly rate for all hours worked in excess of forty hours a workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq.* Plaintiff also brings a breach of contract claim under Louisiana state law, a claim for wages owed under La. R.S. 23:631, and an action to obtain declaratory and injunctive relief against Defendants herein.

2.

Plaintiff seeks to recover from Defendants all unpaid wages, interest, liquidated damages,

1

and attorneys' fees and costs.

## JURISDICTION

3.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA). Additionally, this court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.

Venue is proper in this Court because of the contracts between the parties which specify that any claim or dispute shall be brought in state or federal courts closest to C. Pepper Logistics, LLC, and Independent Service Provider, LLC's corporate office in Roanoke, Texas.

## PARTIES

5.

Plaintiff, Charles R. Bourque, is a resident of the full age of majority of the State of Louisiana who is domiciled in the Parish of Vermillion.

6.

Defendant Independent Service Provider, LLC ("ISP") is a foreign limited liability company organized under the laws of the state of Missouri, which does business in the State of Louisiana.

7.

Defendant C Pepper Logistics, LLC ("C. Pepper") is a foreign limited liability company organized under the laws of the state of Missouri, which business in the State of Louisiana.

8.

Defendant James L. Pepper is the manager of Defendants ISP, and C. Pepper.

## Defendant Independent Service Provider, LLC

9.

ISP is an express overnight pickup and delivery service providing less than a truckload freight shipping and scheduled line haul shipments to businesses anywhere in the country. ISP also contracts with businesses in several different industries to provide daily scheduled pick-up and deliveries.

10.

ISP maintained the power to terminate Plaintiff's employment as set forth in a January 12, 2018 contract between the parties.

11.

The 2018 ISP contract and a 2019 C Pepper contract Plaintiff entered into with Defendants contain a provision regarding "charge backs," or deductions from Plaintiff's pay. It provides in part that expenses shall be deducted from Plaintiff's compensation and shall include expenses based *on the actual cost or expense incurred* by Defendants and any administrative fee or mark-up. The contracts further provide that Defendants would issue Plaintiff a fuel card to be used for all fuel purchases, and that all fuel charges and state fuel taxes would be charged back to Plaintiff along with a monthly fee of $40 for each vehicle contracted to CARRIER.

12.

The ISP and C Pepper contracts cite "fuel and fuel taxes" as charge back items to be deduced from Plaintiff's compensation based on the *actual costs* of same. Nothing therein is provided for deductions for physical damage deductions.

13.

The January 12, 2018 ISP contract, which is identical to the July 2019 C Pepper contract,

provided that it was Plaintiff's responsibility to procure, carry and maintain any fire, theft, uninsured and/or underinsured motorist, and physical damage, or other insurance coverage that Plaintiff *may desire*. These contracts further provided that Plaintiff *may* authorize Defendants to provide Plaintiff with physical damage coverage to his truck/tractor by so indicating in the "Certificate of Insurance" attached to the contract.

14.

Plaintiff's contracts with ISP and C Pepper also stated that an escrow fund would be established and administered by the Carrier (C Pepper/ISP), the purpose of which was to pay the Carrier for any charge backs if Plaintiff's pay at the end of a given week was insufficient to cover all expenses. However, Defendants did not complete the document and left blank the portions of the document which provided for the establishment of the escrow account.

15.

ISP supervised the day to day work activities of the Plaintiff by requiring that Plaintiff call the ISP and/or C Pepper supervisor after every stop, and by installing a GPS device in the truck/tractor operated by Plaintiff to continuously track his location and progress throughout each workday.

16.

ISP Terminal Manager, Annette Mellano, determined Plaintiff's work schedule.

17.

Annette Mellano and/or another ISP or C. Pepper supervisor determined the specific routes Plaintiff would drive for the employment at issue herein, such that Plaintiff used none of his own initiative or independent judgment in determining the routes to drive.

18.

ISP maintained an employment file for Plaintiff.

19.

ISP determined the rate and method of compensation to Plaintiff as set forth in a January 12, 2018 contract between the parties.

20.

From about January 12, 2018 until about July 2019, Plaintiff was economically dependent on ISP as he worked exclusively with ISP and then C. Pepper. Plaintiff's opportunity for profit from this employment was determined solely by ISP as Plaintiff did not use any of his own equipment and had no financial investment in ISP. During Plaintiff's employment with ISP, Plaintiff used a truck rented by ISP and/or C. Pepper from Ryder Truck Rental, Inc., as well as a dolly owned by C. Pepper and/or ISP. Plaintiff would not be compensated unless he complied with the directives of ISP and/or C. Pepper managers and adhered to the terms of the January 12, 2018 contract between the parties.

21.

ISP is an "enterprise" as that term is defined by the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1) as Defendant ISP facilitates the delivery of automotive and tractor parts throughout Louisiana, which parts have been shipped to Louisiana from other states.

22.

ISP is an "employer" within the meaning of FLSA, 29 U.S.C. § 203(d) for the reasons set forth above.

23.

Upon information and belief, ISP has an annual dollar volume of sales or business of at least $500,000.

### Defendant C. Pepper Logistics, LLC

24.

C Pepper is also an express overnight pickup and delivery service providing less than a truckload freight shipping and scheduled line haul shipments to businesses anywhere in the country. ISP also contracts with businesses in several different industries to provide daily scheduled pick-up and deliveries.

25.

On around July 2019 C. Pepper, represented by Terminal Manager, Annette Mellano, contracted with Charles R. Bourque, for Mr. Bourque to provide professional truck driving services, "other incidental transportation related services and the use of certain equipment." This contract was set to expire within one (1) year or sometime in July 2020.

26.

C. Pepper maintained the power to terminate Plaintiff's employment as set forth in a July 2019 contract between the parties.

27.

C. Pepper supervised the day to day work activities of Plaintiff by requiring that Plaintiff call the C. Pepper and/or ISP supervisor after every stop, and by installing a GPS device in the truck/tractor operated by Plaintiff to continuously track his location and progress throughout each workday.

28.

C. Pepper determined Plaintiff's work schedule for the employment at issue herein.

29.

Annette Mellano and/or another C. Pepper supervisor determined the specific routes Plaintiff would drive for the employment at issue herein, such that Plaintiff used none of his own initiative or independent judgment in determining the routes to drive.

30.

C. Pepper has maintained an employment file for Plaintiff.

31.

From about July 2019 until September 27, 2019 when he was terminated, Plaintiff was economically dependent on C. Pepper as he worked exclusively with C. Pepper during this time period. Plaintiff's opportunity for profit from this employment was determined solely by C. Pepper as Plaintiff did not use any of his own equipment and had no financial investment in C. Pepper. During Plaintiff's employment with C. Pepper, Plaintiff used a truck rented by C. Pepper and/or ISP from Ryder Truck Rental, Inc., as well as a dolly owned by C. Pepper and/or ISP. Plaintiff would not be compensated unless he complied with the directives of ISP and/or C. Pepper managers and adhered to the terms of the July 2019 contract between the parties.

32.

C. Pepper is an "enterprise" as that term is defined by the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1) as Defendant C. Pepper facilitates the delivery of automotive and tractor parts throughout Louisiana, which parts have been shipped to Louisiana from other states.

33.

C. Pepper is an "employer" within the meaning of FLSA, 29 U.S.C. § 203(d) for the reasons set forth above.

34.

Upon information and belief, C. Pepper has an annual dollar volume of sales or business of at least $500,000.

**Defendant James L. Pepper**

35.

At all pertinent times herein, Defendant James L. Pepper had the authority to hire and fire ISP and C. Pepper employees.

**FACTUAL ALLEGATIONS**

36.

Plaintiff was employed by Defendant ISP from about January 12, 2018 until about July 2019.

37.

Plaintiff worked out of the Lanter terminal. The Lafayette Lanter terminal was populated by at least twenty (20) C. Pepper and/or ISP truck drivers and/or laborers. Likewise, Lanter's Shreveport terminal was populated by at least twenty (20) C. Pepper and/or ISP truck drivers and/or laborers.

38.

Plaintiff worked as a professional truck driver delivering automotive and tractor parts to various automotive dealerships in South Louisiana.

39.

Defendants paid Plaintiff about $20.00 per hour. For every hour that he worked in excess of forty in any particular week he was still only paid $20.00 per hour. Since being employed by Defendants, Mr. Bourque was misclassified as an independent contractor, and was paid $600.00 per week, based on working forty (40) hours every week, without any withholdings from his compensation. Defendants ISP and C. Pepper issued Plaintiff a 1099 tax form for 2018.

40.

On information and belief, Plaintiff worked a significant amount of overtime, for which he has not been compensated, having commenced his employment with ISP on about January 12, 2018 until June 30, 2018. During Plaintiff's employment with ISP and/or C. Pepper he worked approximately 2,352 regular hours and about 54.25 overtime hours from about July 3, 2018 until August 31, 2019 for which he has never been compensated.

41.

Defendants James Pepper, C. Pepper, and/or ISP breached the 2018 contract entered into with Plaintiff by deducting a flat rate from Plaintiff's weekly compensation for Plaintiff's fuel expenses, and by deducting amounts from his weekly compensation for permissive physical damage insurance coverage, which insurance coverage Plaintiff did not choose to purchase.

42.

In truth and in fact, Plaintiff was an "employee" of the Defendants as that term is defined in the FLSA, 29 U.S.C. § 203(d).

43.

Plaintiff was paid by check bearing the name "Independent Service Provider, LLC," and was subsequently paid by check bearing the name "C Pepper Logistics, LLC."

44.

Mr. Bourque reported for work every weekday at 1:00 a.m. and typically worked 8-9 hours per day. However, the actual duration of his work shifts depended on whether "line hauls" (movement of freight between cities) were running on time. Often times these line-hauls did not run on time, requiring Mr. Bourque to work over eight (8) hours per day. However, Mr. Bourque was paid for only eight (8) hours of work each day, regardless of the actual number of hours he worked.

45.

Upon information and belief, Defendants jointly employed seventeen (17) people, and C. Pepper and/or ISP generally handled the pay for all employees in the same manner, including that of supervisors, who were promoted from positions as drivers.

46.

Plaintiff Bourque was issued a corporate fuel card by C Pepper, and/or ISP.

47.

Defendants have continuously withheld $650.00 from Plaintiff's compensation every week, regardless of how much Plaintiff actually spent on fuel, and despite that Plaintiff frequently turned in weekly fuel receipts for amounts less than $650.00, including receipts for $480.00 and $500.00.

48.

Defendants have failed and refused to properly reimburse Plaintiff Bourque for the fuel expenses erroneously withheld from Plaintiff's compensation, despite Plaintiff's repeated requests for reimbursement of his fuel expenses.

49.

Plaintiff typically provided ISP and/or C Pepper with all of his weekly fuel receipts. In response to Plaintiff's complaints of Defendants' improper and excessive withholding of fuel reimbursement, Ms. Annette Mellano provided Plaintiff with conflicting information, including informing Plaintiff that he was not required to pay for any fuel expenses or stated simply that she would "have to get with corporate." To date, Plaintiff has received no further response from ISP and/or C. Pepper about his fuel reimbursement requests.

50.

Plaintiff was not advised that any physical damage deductions would be withheld from his weekly compensation. In fact, Plaintiff was advised by Ms. Mellano that he would have no out of pocket expenses.

51.

Additionally, Plaintiff declined the physical damage insurance coverage on his tractor/truck as indicated on the Certificate of Insurance appended to the 2019 C Pepper contract. Nevertheless, C Pepper and/or ISP have continuously deducted $50.00 per week from Plaintiff's paychecks for this insurance.

## COUNT I

### Fair Labor Standards Act

52.

Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

53.

From January 12, 2018 until September 27, 2019, Plaintiff was employed by Defendants

performing truck driving services in Louisiana as an hourly or non-exempt employee, worked in excess of forty hours in multiple work weeks, and failed to receive overtime pay at the rate of one-and-a-half times his regular rate of pay, for all hours worked in excess of forty in a work week.

54.

Defendants willfully violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a)(1) by not paying Plaintiff one-and-a-half times his regular rate for all hours worked in excess of forty in a workweek from at least January 12, 2018 until the present.

55.

As a consequence of Defendants' FLSA violations, Plaintiff is entitled to recover unpaid overtime wages, plus an additional equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b).

56.

Plaintiff reserves the right to claim any other financial losses sustained a result of his improper classification as an independent contractor.

## COUNT II- State Law Claims

**Breach of Contract Claim Under Louisiana State Law and
Claim for Wages Owed Under La. R.S. 23:631**

57.

Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

58.

A flat rate of $650.00 was withheld from each of Plaintiff's weekly paychecks despite the fact that Plaintiff submitted all weekly fuel receipts to Defendants C Pepper and/or ISP for lesser amounts actually spent, and is thus owed thousands of dollars in fuel reimbursements, for which

C Pepper and/or ISP refused to reimburse Plaintiff, such that ISP and/or C Pepper have breached the contract entered into between the parties.

59.

Plaintiff was not advised that any physical damage deductions would be withheld from his weekly compensation, and in fact declined the permissive physical damage insurance coverage on his tractor/truck as indicated on the Certificate of Insurance appended to the 2019 C Pepper contract. Nevertheless, C Pepper and/or ISP have continuously deducted the cost of this coverage from Plaintiff's weekly compensation, such that ISP and/or C Pepper have actively breached the contract entered into between the parties.

60.

As a result of Defendants' breach of contract, Charles R. Bourque has sustained significant financial losses of due to Defendants' improper physical damage deductions from Plaintiff's weekly compensation.

61.

Plaintiff is entitled to recover his attorney's fees and litigation expenses in connection with bringing this litigation because of Defendants' breach of its covenants, representations and warranties under the contract, and for Defendant's failure to pay all wages due upon Plaintiff's termination pursuant to La. R.S. 23:631, and after demand for same was made upon Defendants herein.

WHEREFORE, Plaintiff prays that after due proceedings are had that this Court enter judgment in his favor against Defendants and issue an order:

a. Entering judgment in the amount of all unpaid overtime wages, and all other wages due

and owing to the Plaintiff as well as all applicable liquidated damages;

b. Declaring that Defendants' conduct violated the FLSA;

c. Enjoining Defendants from violating the FLSA's overtime and minimum wage provisions;

d. Declaring that Defendants breached the contracts at issue, and that Plaintiff is owed wages pursuant to La. R.S. 23:631;

e. Awarding Plaintiff reasonable attorneys' fees and costs of this action;

f. Awarding pre-judgment and post-judgment interest on all monetary amounts in this action; and

g. Awarding such other general and equitable relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

**SMITH LAW FIRM**

*/s/ J. Arthur Smith, IV*
J. Arthur Smith, III, T.A. (La. #07730)
J. Arthur Smith, IV (La. #37310)
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
jasmith@jarthursmith.com
asmithiv@jarthursmith.com
*Pro-hac Vice*

*-And-*

Brian P. Sanford<br>
Texas Bar No. 17630700<br>
bsanford@sanfordfirm.com<br>
Elizbeth "BB" Sanford<br>
Texas Bar No. 24100618<br>
**THE SANFORD FIRM**<br>
1910 Pacific Ave., Suite 15400<br>
Dallas, TX 75201<br>
Ph: (214) 717-6653<br>
Fax: (214) 919-0113<br>
bsanford@sanfordfirm.com<br>
esanford@sanfordfirm.com<br>
*Counsel for Plaintiff, Charles R. Bourque*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was this day filed into the record of this matter with the Clerk of Court for the U.S. District Court, Eastern District of Texas via the Court's ECF/ECM electronic filing system, and that a copy of same was served upon all counsel of record via automatic operation of that filing system.

Baton Rouge, Louisiana, this 1st day of November, 2022.

/s/ *J. Arthur Smith, IV*
J. Arthur Smith, IV